IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DOUGLAS FRANK CARRIL**,

      Plaintiff,

vs.                                                    **Civ. No. 11-936 BB/LFG**

**STATE OF NEW MEXICO, DEPARTMENT
OF LABOR, EMPLOYMENT SECURITY
DIVISION; DIRECTOR JACKIE INGLE;
LA POSTA GROUP, INC., TOM HUTCHINSON,
OWNER,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER DISMISSING COMPLAINT

**THIS MATTER** comes before the Court on pro se Plaintiff Douglas Frank Carril's

application seeking authorization to proceed *in forma pauperis* ("IFP") with this litigation, *i.e.*,

without prepaying costs or filing fees.  *See* Doc. 2, filed October 20, 2011.  When determining

whether to grant permission to proceed IFP, the Court must "review the affidavit and screen

[Carril's] case under 28 U.S.C. §§ 1915(a) and (e)."  *Lister v. Dep't of Treasury*, 408 F.3d 1309,

1311 (10th Cir. 2005).  Screening the case under § 1915(e) includes determining whether "the

allegation of poverty is untrue" as well as determining whether the action "is frivolous or malicious,

. . . fails to state a claim on which relief may be granted; or [] seeks monetary relief against a

defendant who is immune from such relief."  § 1915(e).  "[I]n order to succeed on a motion to

proceed IFP, the movant must show a financial inability to pay the required filing fees, as well as

the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues

raised in the action."  *Lister*, 408 F.3d at 1312.   If the Court determines that "the allegation of

poverty is untrue," or that a complaint filed without the prepayment of filing fees fails to state a

claim or names a defendant who is immune from suit, it must dismiss the case. *See* § 1915(e)(2)(A),

(B); *Trujillo v. Williams*, 465 F.3d 1210, 1217 n. 5 (10th Cir. 2006) (noting that dismissal of complaints under § 1915(e) is now mandatory).

Regarding the ability-to-pay prong of the IFP analysis, IFP status should be granted only if a plaintiff demonstrates that he "cannot because of his poverty pay or give security for the costs . . . and still be able to provide himself and dependents with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

Carril, who is 35 years old and has no dependents, is not currently employed but apparently is able to hold a job and has 18 years of education. *See* Doc. 2 at 2, 5. He has $125 in cash, $425 in his checking account, and owns a car and a 2011 motorcycle. *See id.* at 2-5. But the Court need not hold a hearing to determine the veracity of Carril's allegation of indigency because, as discussed below, his Complaint must be dismissed for because he has sued immune defendants and has failed to state a claim upon which relief may be granted.

## I.      The Complaint.

Using a standard, fill-in-the-blank form complaint for actions brought under 42 U.S.C. § 1983, Carril is suing the State of New Mexico, its Department of Labor - Employment Security Division, and Jackie Ingle, the Director of the Employment Security Division, as well as Tom Hutchinson, his former employer, because the Division denied his claim for unemployment benefits after Hutchinson fired him from his job as a waiter at La Posta Restaurant in March 2011. *See* Complaint at 4. Carril applied for unemployment benefits on March 27, 2011. *See id.* Hutchinson objected and sent to the Division his reasons for firing Carril, along with some supporting documentation. *See id.* After receiving this material, a claims examiner held a telephonic hearing on April 7, 2011 and denied benefits upon determining that Carril was disqualified from receiving benefits. *See id.* On April 19, 2011, Carril appealed the denial of his claim, and an appeal hearing

was set for June 30, 2011.  *See id.*  After Carril submitted requests for employment records from Hutchinson, that hearing was vacated.  On June 22, 2011 Carril received a copy of all of the employment records and supporting documentation that Hutchinson had submitted to the Division; a "subpoena hearing" was scheduled on June 29, 2011; and it was held before an administrative law judge ("ALJ") on July 12, 2011.  *See id.* at 4, 19.  The ALJ denied benefits on July 12, 2011.  Carril appealed to the Board of Review from that denial on July 18, 2011, and  also challenged the ALJ's July 14 or 15, 2011 decision to deny Carril's request for production of more documents from Hutchinson.  On August 5, 2011, the Board of Review notified Carril that his appeal was scheduled for August 17, 2011.  *See id.* at 5, 9.  The Board of Review issued its final decision affirming the decision of the ALJ on September 16, 2011, and Defendant Ingle signed that decision on behalf of the Board of Review.  *See id.*; *id.* att. 3 at 23-24 (copy of final decision).  In its final decision, the Board of Review instructed Carril on how to file a statutory appeal from the Board of Review's decision in the state district court.  *See* Complaint at 6; *Id.* att. 3 at 23-24.  Instead, Carril filed a petition for a writ of certiorari challenging the Board of Review's decision with the New Mexico Supreme Court on October 14, 2011.  *See id.* at 22.

A week later, Carril filed this federal suit, in which Carril contends that the Division and its employees were "negligent with their lack of action to investigate and negligent with their lackadaisical procedure in making a decision," which deprived him of his "rights to procedural due process and equal protection" under the federal constitution.  Complaint at 6.  Carril contends that Hutchinson "is an appointed public officer that [sic] has served on Commissions with the Cabinet Secretary of the Department of Workforce Solutions in New Mexico, Celina Bussey, and other members of the Department;" that he was "named to the search committee that helped select the

Cabinet Secretary to the Department;" and that Hutchinson submitted "false statements to the examiner attacking my credibility in order to avoid" paying the unemployment claim. *Id.* at 5.

Count I of Carill's complaint alleges violation of 42 U.S.C. §§ 503(a)(1) & (3) because Defendants Ingle and Hutchinson allegedly deprived Carril "of a fair hearing to appeal the employment benefits[he] was denied" arising from his claim that the Division did not investigate Hutchinson's alleged involvement with the Department of Workforce Solutions and Secretary Bussey and his claims that Hutchinson's evidence was fraudulent. *See* Complaint at 6-7.

Count II is brought against Defendant Ingle under 20 C.F.R. § 650, alleging that she was "negligent with delays caused with the adjudication process" because the Board of Review did not send to Carril his Notice for Review until August 5, 2011 and did not issue its final decision until September 16, 2011. *See id.* at 8-9.

Count III alleges that both Ingle and Hutchinson violated 20 C.F.R. § 650.4, because of the delays and because the Board of Review's final decision "did not even refer to the Subpoena Hearing . . . consequently never meeting the required performance . . . ." *Id.* at 10-11.

Count IV alleges that Ingle violated the Equal Protection Clause by failing to investigate Carril's claims that Hutchinson's appointed position with the Small Business Friendly Task Force deprived Carril of a fair hearing because Carril was not afforded an opportunity to similarly influence Department of Workforce Solution rules and employees. *See id.* at 11-12.

Count V alleges that Ingle violated Carril's due-process rights because Hutchinson allegedly made false and fraudulent statements at the subpoena hearing and because no appeal hearing was held on Carril's objection to the ALJ's denial of Carril's request for production of more employment records. *See id.* at 13-15. He also contends that Ingle violated unspecified sections of the State's Personnel Act in unspecified ways. *See id.* at 14.

Count VI alleges that Hutchinson violated the State "Fraud Against Taxpayers Act" and the federal False Claims Act, 31 U.S.C. § 3729 by "knowingly and intentionally submitting false statements and modified records to the Department of Workforce Solutions to avoid his obligation to the Government of paying unemployment insurance tax . . . ." *Id.* at 15-16.

Count VII alleges that Hutchinson violated N.M.S.A. § 10-16-3(A) and (C) and § 10-16-4 of the State's Government Conduct Act by concurrently serving on the Small Business Friendly Task Force and filing an objection to Carril receiving unemployment benefits, and by failing to disclose his alleged conflict of interest by not informing anyone that he had been named to serve on a search committee of the Department of Workforce Solutions Transition Services Division. *See id.* at 19-21.

In his request for relief, Carril requests both compensatory and punitive damages under § 1983 from all of the Defendants. *See id.* at 22-23. He requests unspecified injunctive relief "from the inadequacy of remedies at law with the Department of Workforce Solutions . . . for their unfair, untimely, and lack of reasonable care with their performance and accountability that cause [sic] substantial and irreparable damage to all claimants that are denied employment benefits." *Id.* at 23. He requests that the Court "prosecute" Hutchinson for violating the Government Conduct Act and the False Claims Act. *See id.* at 24.

## II.    Applicable law.

In screening Carril's complaint, the Court resolves the issue whether it states a claim on which relief may be granted by applying the same standards used in resolving motions to dismiss for failure to state a claim brought under FED. R. CIV. P. 12(b)(6). *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). This means that the Court must

> look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. Rather than adjudging whether a claim is 'improbable,' factual allegations in a complaint must be enough to raise a right to relief above the speculative level. In addition, [the Court] must construe a pro se [] complaint liberally.

*Id.* at 1218 (internal quotation marks, original brackets, and citations omitted). In screening the Amended Complaint, the Court will accept as true Carril's allegations and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to Carril. *See id.* at 1217. But a court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Further, t in the wake of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937 (2009), courts must carefully scrutinize a plaintiff's complaint to determine if an actionable claim is asserted at all. In *Twombly*, the Court noted that the pleading standard of FED. R. CIV. P. 8 does not require "detailed factual allegations," 550 U.S. at 555, but the Rule demands more than an unadorned "the defendant-unlawfully-harmed-me" account, *see Iqbal*, 129 S. Ct. at 1949. The Supreme Court warned against pleadings that offer "labels and conclusions" or "a formulaic recitation of the elements of the cause of action . . . ." These, the Court stated, "will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

The courts should take a two-step approach in determining whether a complaint states a claim upon which relief may be granted. First, it "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 1951. Then it only "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to

6

relief." *Id.*; *see id.* at 1954 (rejecting the plaintiff's argument that he sufficiently stated a claim for relief by generally alleging that the defendants "discriminated against him 'on account of [his] religion, race, and/or national origin and for no legitimate penological interest,'" and stating, "[w]ere we required to accept this allegation as true, respondent's complaint would survive petitioners' motion to dismiss.  But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.") (citations omitted).

Title 42 U.S.C. §§ 503(a)(1) and (3) provide that the Secretary of Labor may not expend federal money to help a state defray the costs of administering its unemployment compensation program unless the state's unemployment insurance laws provide for "[s]uch methods of administration . . . as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due" and also provide an "[o]pportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied."   Accordingly, the United States Department of Labor has issued regulations requiring "prompt determination of eligibility;" and administrative methods in the state administrative agencies that "will reasonably insure the full payment of unemployment benefits to eligible claimants with the greatest promptness that is administratively feasible" and that are "reasonably calculated to insure full payment of unemployment compensation when due." 20 C.F.R. §§ 640.1(a)(2), 640.3(a), 650.1(b).   Under 20 C.F.R. § 650.4(a), "[a] State law will satisfy the requirements of § 650.3(a) if it contains a provision requiring, or is construed to require, hearing and decision for claimants who are parties to an administrative appeal affecting benefit rights with the greatest promptness that is administratively feasible."   Under § 650.4(b), "[a] State will be deemed to comply substantially with the State law requirements set forth in § 650.3(a) with respect to first level appeals, [if] the State has issued at least 60 percent of all first level benefit appeal decisions

within 30 days of the date of appeal, and at least 80 percent of all first level benefit appeal decisions within 45 days."

> Whenever the Secretary of Labor, after reasonable notice and opportunity for hearing to the State agency charged with the administration of the State law, finds that there is a failure to comply substantially with the requirements of paragraph (1), the Secretary of Labor shall notify such State agency that further payments will not be made to the State until the Secretary of Labor is satisfied that there is no longer any such failure.

42 U.S.C. § 503(h)(2).  The Tenth Circuit has held that a private right of action against a state unemployment compensation department's director for declaratory or injunctive relief "is available to enforce the 'fair hearing' requirement."  *Shaw v. Valdez,* 819 F.2d 965, 966, 970 (10th Cir. 1987) (holding that plaintiff had stated "a meritorious claim [for declaratory or injunctive relief] that the Colorado procedure for administering unemployment benefits violated the 'fair hearing' requirement of 42 U.S.C. § 503(a)(3) due to lack of fair notice of factual and legal issues to be faced" at the hearing, where substantive mistakes in notice and hearing given in the case were due to an "established State procedure rather than a random and unauthorized act of a state official").

Nonetheless, § 1983 does not provide for a cause of action for monetary, declaratory, or equitable relief against a state or its agencies for violating the Constitution or federal law because they are not "persons" under § 1983, and only a claim for declaratory or injunctive relief may be brought against the state's official, acting in her official capacity.  *See Reames v. Okla. ex rel. OK Health Care Auth.*, 411 F.3d 1164, 1167 & n.2 (10th Cir. 2005) (noting that the Eleventh "Amendment precludes not only actions in which the state is directly named as a party, but also actions brought against a state agency or state officer where the action is essentially one for recovery of money from the state treasury.  *Edelman v. Jordan*, 415 U.S. 651, 677, 94 S. Ct. 1347, 39 L. Ed.2d 662 (1974) (barring any "retroactive award which requires the payment of funds from the

8

state treasury" and limiting the federal courts to providing only "prospective injunctive relief" against state officials sued in their official capacity.)").

The federal False Claims Act allows the Government, in a civil action instituted by the United States Attorney General, to recover damages and penalties from those who knowingly submit or cause to be submitted false or fraudulent claims for payment to the Government. *See* 31 U.S.C. § 3729. "'[A] false or fraudulent claim' is a common requirement of all three subsections of § 3729(a). Thus, if the factual allegations do not support a conclusion that a 'false or fraudulent claim' was made, the case may not proceed under the FCA." *United States ex rel. Morton v. A Plus Benefits, Inc.*, No. 04-4148, 139 Fed. App'x 980, 982, 2005 WL 1672221, *3 (10th Cir. July 19, 2005).

Similarly, New Mexico's Fraud Against Taxpayers Act, NMSA 1978, §§ 44-9-1 to -14 (2007), prohibits submitting to state employees, officers or agents "a false or fraudulent claim for payment or approval" or using a "false, misleading or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim", N.M.S.A. 1978 § 44-9-3(A)(1), (2); and the term "claim" "means a request or demand for money, property or services when all or a portion of the money, property or services requested or demanded issues from or is provided or reimbursed by the state," N.M.S.A. 44-9-2(A).  Further, to state a claim under the Act, the plaintiff must "bring any action in the name of the state.  *See* § 44-9-5(A)." *Peterson v. Neubauer*, 2010 WL 4621717, *2 (N. M. Ct. App. July 28, 2010), *cert. denied*, 149 N.M. 64, 243 P.3d 1146 (Oct 5, 2010).

## III.   Analysis

All of Carril's § 1983 claims against the State and the Employment Security Division of the Department of Labor, and his claims for monetary damages against Ingle must be dismissed because

the entities and Ingle, acting in her official capacity, are sovereignly immune and are not "persons" under § 1983.  While Carril has asserted a claim for unspecific injunctive relief against Ingle either under § 1983 or § 503, for which she is considered a nonimmune "person", that claim seeks unspecified injunctive relief for the entire class of persons who seek unemployment benefits, and Carril, who is not a lawyer and who does not represent anyone but himself, may not seek any remedies for anyone other than himself.  *See* 28 U.S.C. §1654 (providing that "parties may plead and conduct their own cases personally or by counsel"); *Fymbo v. State Farm Fire & Casualty Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others.").  Carril states no facts indicating that a state policy or procedure violates § 503.  Carril has failed to state a cognizable claim for injunctive relief against Ingle under either § 1983 or § 503.

Insofar as Carril seeks to sue Ingle for alleged violation of the State Personnel Act[1], he has failed to set forth any facts to show violation of that Act or that it applies to Ingle.  All claims against the State, the Department of Labor and its Employment Security Division and Ingle must be dismissed.

Carril's claims against Hutchinson for alleged violation of the State's Government Conduct Act must be dismissed as a matter of law because there appears to be no private right of action under that Act.  Instead, "[t]he secretary of state may refer suspected violations of the Governmental Conduct Act to the attorney general, district attorney or appropriate state agency or legislative body

---

[1] The Court assumes that Carril is referring to the State's Personnel Act, codified in Chapter 10, Article 9, the purpose of which "is to establish for New Mexico a system of personnel administration based solely on qualification and ability."  N.M.S.A. 1978 § 10-9-2.  The Personnel Act does not apply to "members of boards and commissions and heads of agencies appointed by the governor."  N.M.S.A. 1978 § 10-9-4(B).

for enforcement."   N.M.S.A. 1978 § 10-16-14(A).   *See also* N.M.S.A. 1978 § 10-16-14(E)

(providing that "the Governmental Conduct Act may be enforced by the attorney general.  Except

as regards legislators or statewide elected officials, a district attorney in the county where a person

resides or where a violation occurred may also enforce that act. Enforcement actions may include

seeking civil injunctive or other appropriate orders."); N.M.S.A. 1978 § 10-16-18(B) ("The attorney

general or a district attorney may institute a civil action in district court if a violation has occurred

or to prevent a violation of any provision of the Governmental Conduct Act. Relief may include a

permanent or temporary injunction, a restraining order or any other appropriate order, including an

order for a civil penalty of two hundred fifty dollars ($250) for each violation not to exceed five

thousand dollars ($5,000).").  His request that the Court criminally "prosecute" Hutchinson under

N.M.S.A. § 10-16-4 and § 31-18-15 is frivolous.  Further, section 10-16-4(A) provides that "[i]t is

unlawful for a public officer or employee to take an *official act* for the primary purpose of directly

enhancing the public officer's or employee's financial interest or financial position", and Carril's

Complaint alleges only that Hutchinson acted privately as a business owner when he objected to

Carril's request for benefits, so Carril has not even alleged a violation of section 10-16-4.

    To state a claim under § 1983, a plaintiff must show that he was injured as a result of state

action.  *See Gallagher v. "Neil Young Freedom Concert"*, 49 F.3d 1442, 1447 (10th Cir. 1995).

Private conduct, "no matter how . . . wrongful," may not be redressed by a § 1983 claim.  *Am. Mfrs.*

*Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted). "[A] private

party's mere invocation of state legal procedures does not constitute joint participation [with a

judge] and thus is not state action"  *Read v. Klein*, No. 99-5058, 1 Fed. App'x 866, 871, 2001 WL

20818, **5 (10th Cir. Jan. 9, 2001) (affirming dismissal of § 1983 action against private party and

his attorney for obtaining an order that the plaintiff alleged violated his constitutional rights).

Further, "[w]hen a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state . . . judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983). This "standard is even stricter where the state officials allegedly involved in the conspiracy are immune from suit, as [is] the state court judge[ ] here." *Id.*

 Carril's claims against Hutchinson brought under § 1983 must fail because Hutchinson is a private actor and Carril alleges nothing to demonstrate a conspiracy to violate Carril's right to due process between Hutchinson and the ALJ or any other Employment Security Division employee who played a part in denying Carril's benefits. The fact that Hutchinson served on a search committee and knows Bussey (who played no part in the denial of Carril's benefits), or that Hutchinson serves on the Governor's Small Business Friendly Task Force does not imply that Hutchinson has any influence on the hearing officers, judges, or members of the Board of Review who ruled on Carril's request for unemployment benefits. Further, Hutchinson is not an employer or officer of the Employment Security Division, so any allegations regarding violation of § 503 and the corresponding C.F.R. do not apply to him.

 Carril's claims against Hutchinson under the federal False Claims Act and the state Fraud Against Taxpayers Act must be dismissed for failure to state a claim because he has not alleged, and cannot allege, that Hutchinson made a 'false or fraudulent claim' for payment to either the United States or State officers or employees by submitting objections to Carril's request for unemployment benefits.

 The Court concludes that Carril's Complaint must be dismissed for failure to state cognizable claims against any of the Defendants and because he seeks to sue Defendants that are immune.

**IT IS ORDERED** that Carril's application to proceed IFP [Doc. 2] is DENIED and his case is DISMISSED.

_____
UNITED STATES DISTRICT JUDGE